CITY OF PONCA CITY, a municipal corporation, Appellant,

v.

HOUSING AUTHORITY OF the KAW TRIBE OF INDIANS OF OKLAHOMA, an agency of the State of Oklahoma, Appellee.

No. 76032.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 13, 1992.

Gary L. Bracken, Ponca City, for appellant.

Nathan H. Young III, Linda A. Epperley, Tahlequah, for appellee.

BRIGHTMIRE, Judge.

The issue presented for review is whether the trial court erred in "dissolving" a permanent injunction, granted in a final judgment rendered a year earlier, on motion of the defendant.

We hold that it did.

I

On February 17, 1989, the City of Ponca City (City) filed a petition for a "temporary and permanent injunction" to enjoin the Housing Authority of the Kaw Tribe of Indians of Oklahoma (Tribe) from operating a housing authority or from purchasing real estate within the City for that purpose. On March 8, 1989, the Tribe filed a motion for summary judgment[1] and a motion to dismiss the temporary injunction issued against it. Later, on March 21, some eighty or so Ponca City property owners

---

1. Attached to its motion for summary judgment was a letter dated December 21, 1988, written by the mayor of Ponca City in which he vetoed a "Co-operative Agreement between the Housing Authority of the Kaw Tribe of Indians and the City of Ponca City," and a copy of the minutes of the Board of Commissioners of the City of Ponca City disclosing that the veto was unanimously approved January 6, 1989.

filed a motion and petition to intervene in this action.[2]

The Tribe's motions were heard April 3, 1989. Following argument of counsel, the court denied the Tribe's motions to dismiss and for summary judgment. Instead it granted the City a summary judgment in the form of a permanent injunction—enjoining the Tribe from operating "within the municipal limits of ... Ponca City without first obtaining the consent of the [City] Housing Authority there operating."

The judgment became final. Instead of attacking the judgment by means of a timely appeal, the Tribe challenged its validity under federal law in the United States District Court for the Western District of Oklahoma. The federal district court dismissed the Tribe's action for lack of standing. In an opinion issued December 19, 1991, the Tenth Circuit Court of Appeals sustained that part of the order dismissing the Tribe's claims brought under 42 U.S.C.A. §§ 1981–1983 (1988), and reversed and remanded the dismissal of the Tribe's claim under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C.A. §§ 3601–3631 (1988).[3]

In the meantime, while the foregoing appeal was pending, the Tribe returned to the state court and filed a "Motion to Dissolve Permanent Injunction" on April 27, 1990. In it the Tribe alleged that the Ponca City Housing Authority adopted a resolution on January 18, 1990, "allowing the Kaw Housing Authority to operate within the City limits of Ponca City for the purpose of acquiring or constructing ten (10) mutual-help, non-rental, units," and on February 22, 1990, formally adopted a resolution confirming the first one. Based on such resolutions the Tribe stated that "conditions of [the] injunction having been satisfied in full and all other issues having been declared moot, the [Tribe] moves this Court to vacate, dissolve, and nullify the permanent injunction and dismiss this case."

On June 27, 1990, after hearing argument of counsel, the trial court sustained the Tribe's motion and ordered that the final judgment it had entered April 3, 1989, be "dissolved and vacated."

The City appeals.

## II

The City's first contention is that the court erred in dissolving the permanent injunction without examining other issues raised by it—particularly the one relating to the legality of the Tribe's attempt to extend its operation beyond the limits of its statutorily circumscribed area of operation as an Indian housing authority.

The argument is that other issues were raised by the pleadings and remain unresolved.

The Tribe, on the other hand, contends that "all issues (initially raised) were resolved by the 1989 judgment," and that if "the City did not agree with the April 1989 judgment or felt that additional issues remained outstanding, the City should have moved for a new trial or appealed by May 1989."

We agree with the City that (1) the record discloses that the only issue the court ruled on was whether the Tribe had obtained authorization of the Ponca City Housing Authority to buy the homes in question and (2) it should not be deprived of an opportunity to present other bases for subject injunction.

And by the same token we disagree with the Tribe's suggestion that the City, having won the 1989 lawsuit by being granted the relief it sought, *i.e.*, a permanent injunction, was obliged to insist that the court pass on all other issues raised by the parties at the hearing and, if the court refused to do so, the City should have appealed. Not only would such an effort have been a waste of everyone's time, but a request for the trial court to resolve all issues should

---

**2.** The record does not show what disposition was made of the motion to intervene.

**3.** *Housing Authority of the Kaw Tribe of Indians of Oklahoma v. City of Ponca City,* 952 F.2d 1183 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992).

have been denied as unnecessary and no more than an advisory opinion.

There is, however, a more fundamental question involved here and that is whether the trial court had jurisdiction to entertain the Tribe's motion to dissolve.

We hold it did not. The Tribe concedes the 1989 judgment was a "final" one granting a permanent injunction. Such judgment is distinguishable from a temporary restraining order or temporary injunction.[4]

The distinction is procedurally significant. Instead of treating the Tribe's motion as an impermissible direct attack on a final judgment, the trial court treated the judgment as though it were a temporary injunction *order* subject to a motion to dissolve as provided by 12 O.S.1991 § 1394.

This was error. Being final, the judgment was not subject to direct attack except as authorized by the provisions of 12 O.S.1991 § 1033. *See Morse v. Earnest,* 547 P.2d 955 (Okl.1976).

The significance of this error is that we are being asked to pass on questions which have never been considered by the trial court. Had the proper procedure been followed by the Tribe—filing a new lawsuit seeking dissolution of the injunction on the ground of changed conditions—then the City and the intervenor property owners would have had an opportunity to raise such defenses as they might have, which might very well have included the issues advanced initially in this lawsuit as bases for procuring the injunction in the first place.[5]

---

**4.** See 12 O.S.1991 §§ 1381–1397 setting forth the general provisions of injunctive relief. The statutes employ the term "order" for restraining orders and temporary injunctions, and the term "judgment" for permanent injunctions. These statutes prescribe certain procedures for the procurement and dissolution of restraining orders and temporary injunctions, but not for permanent injunctions. The obvious reason for this is, of course, that the latter is a final judgment governed by the general statutes dealing with the vacation of final judgments. *See* 12 O.S.1991 §§ 1031–1038.

**5.** Although it is necessary to vacate the order dissolving subject injunction and remand with directions to the trial court to overrule the Kaw Tribe's motion to dissolve, we should add the City's first proposition appears to have merit. The Oklahoma Housing Authorities Act authorizes:

"each Indian tribe ... in the state ... to function in the operating area of such Indian tribe ... [to] be known as the 'housing authority' of said Indian tribe ... which shall be an agency of the State of Oklahoma, possessing all powers, rights and functions herein specified for city and county authorities created pursuant to this act: Provided that said Indian housing authority shall not transact any business nor exercise its powers hereunder until or unless the governing council of said tribe ... by proper resolution, declares that there is a need for an authority to function for said tribe ...

Except as otherwise provided in this act, all the provisions of law applicable to housing authorities created for cities and counties and the commissioners of such authorities shall be applicable to Indian housing authorities." 63 O.S.1991 § 1057.

The foregoing indicates that duly-established Indian housing authorities in this state are subject to the same powers and restrictions as those prescribed for city and county housing authorities with the general powers granted to housing authorities set out in 63 O.S.1991 § 1061(b).

Although the "operating area" of an Indian tribe is not statutorily defined, courts have generally defined the boundaries of an Indian tribe's jurisdiction by invoking the legal concept of "Indian Country." Since the issues in this case deal with real property as distinguished from those dealing with taxation or criminal law enforcement, we do not consider the definition of "Indian Country" set out in 18 U.S.C.A. § 1151 as applicable here. Rather, it is the intention of our state legislature we are concerned with. And, as a practical matter, it seems clear enough that that body intended the phrase "operating area of an Indian tribe, band or nation" to mean the boundaries of a contiguous terrestrial territory over which an Indian tribe has some degree of autonomous authority—commonly referred to as sovereignty—which existed at the time the housing authority was created. This definition is not only consistent with the type of operating area statutorily referred to with respect to the other two governmental units featured in the housing authorities act, namely, cities and counties, but is compatible with the object and purpose of the act.

We are also of the opinion that any establishment of an area of operation in Ponca City by an Indian tribe requires an antecedent authorizing resolution by *both* the Board of Commissioners of the City of Ponca City and the Housing Authority of the City of Ponca City. The reason is that 63 O.S.1991 § 1057 specifies that an Indian tribe, band or nation may create and operate a housing authority in its operating area and that "all provisions of law applicable to housing authorities created for cities and counties and the commissioners of such authorities shall be applicable to Indian housing authori-

**656**

### III

For the reasons stated in part II, the order dissolving the permanent injunction in question is vacated and the cause is remanded with directions to overrule the Tribe's motion to dissolve.

REIF, J., concurs.

RAPP, P.J., concurs in result.

RAPP, Presiding Judge, concurring in result.

I concur in the result only because I object to the inclusion of footnote five for the reason it addresses the merits after determining there is no jurisdiction of the trial court.

ties, unless a different meaning clearly appears from the context. And in 63 O.S.1991 § 1054(f)(2) the legislature provided that a county could "not undertake any project within the boundaries of any city unless a resolution shall have been adopted by the governing body of the city *and* by any authority which shall have been theretofore established and authorized to exercise its powers in the city declaring that there is need for the county [or Indian tribal] authority to exercise its powers within that city." (Emphasis added.)

Thus read in harmony with each other and with the overall scheme and design of the act, it is clear that before an Indian housing authority can undertake any project within the statutory boundaries of a city, it must, like a county, be authorized by the required resolution adopted by both the city governing body and the city housing authority declaring there to be a need for such authority—a need, incidentally, of the city and not of the authority seeking to undertake a housing project.